UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA TERESA SOLORIO, <br> Plaintiff, <br> v. <br> NANCY A. BERRYHILL, <br> Defendant. | Case No.16-cv-05572-HRL <br><br> **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br> Re: Dkt. Nos. 16, 20 |

Plaintiff Maria Teresa Solorio (Solorio) appeals a final decision by Nancy Berryhill, Acting Commissioner of the Social Security Administration (the Commissioner), to deny Solorio's application for disability benefits under Title II of the Social Security Act. Solorio moved for summary judgment and the Commissioner filed a cross-motion, to which Solorio never replied. Dkt. Nos. 16, 20. Both parties consented to magistrate judge jurisdiction. Dkt. Nos. 10, 11.

For the reasons described below, the Court denies Solorio's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

**I.    FACTUAL BACKGROUND**

Solorio was born in Mexico in 1973. AR 271. Her formal education ended around the fourth grade, and her reading skills in Spanish are limited. AR 45. After arriving in the United States and obtaining permanent residency status, Solorio worked as a housekeeper, first at a hotel and then at a hospital. AR 177. Solorio's supervisors at the hospital consistently gave her high marks for performance, describing her as an effective and dependable worker. AR 311-54. Solorio has been married for over twenty years, and she lives with her husband and two adult children. AR 40.

Solorio has diabetes, high cholesterol, high blood pressure, and issues with her thyroid. AR 1358. Her main complaints, however, stem from two injuries she suffered in the course of her housekeeping work. In 2007, after cleaning an "especially dirty shower," Solorio felt pain in her right elbow. AR 1240. Dr. Sunita Jayakar, M.D., subsequently diagnosed Solorio with "mild chronic right elbow epicondylitis," commonly known as "tennis elbow." AR 1240-41. Solorio received workers' compensation benefits for about six months. *Id.* She returned to work, but the pain around her right elbow persisted. *Id.*

Solorio sustained a second injury in January 2011. She was lifting a heavy bag of wet linens when she felt a "crack" in her left elbow and pain in her left shoulder. AR 1254. Dr. James Pertsch, M.D., a hand specialist, diagnosed Solorio with radial tunnel syndrome and lateral epicondylitis. AR 1254-55. In August 2011, Dr. Pertsch performed surgery involving "decompression of the radial nerve, Nirshl-type procedure, and extension of ganglion antecubital area of the elbow." AR 1241. Solorio attempted to return to work, but continuing pain prevented her from resuming her normal duties. AR 272. She applied for workers' compensation benefits, and her application was pending when she applied for Social Security benefits. AR 271-72. Solorio has not worked since April 2012. AR 18.

Solorio reported continuing pain after the 2011 surgery, but most of her treating physicians observed steady improvement since then. In February 2012, Dr. Jayakar reported that Solorio's elbow symptoms were improved such that no further medical treatment was necessary except for a home exercise program and stretching. AR 1242. Dr. Jayakar recommended that Solorio not lift more than twenty pounds. *Id.* Similarly, Dr. Pertsch recommended Solorio for modified work duty, instructing her not to lift more than twenty pounds with her left arm. AR 1366. By April 2012, Dr. Jayakar opined that despite chronic residual pain in the left elbow and extensor forearm, Solario could work if she was limited to twenty pounds no more than "occasionally, [with] no forceful gripping or torqueing with [her] left hand." AR 1368. Dr. Pertsch recommended "[c]onservative treatment" in June 2012. *Id.*

Another treating physician, however, thought that Solorio was more impaired than her other doctors recognized. In January 2013, Dr. Eduardo Lin, M.D., a pain management specialist,

prepared a letter in support of Solorio's workers' compensation claim. After noting that Solorio continued to experience pain in her elbows and neck, Dr. Lin identified "decreased cervical range of motion" and "positive rotator cuff impingement" in the left shoulder. AR 1349-50. Dr. Lin also noted that Solorio had full (five out of five) motor strength in both upper extremities. *Id.* Dr. Lin advised Solorio to continue taking Vicodin and Voltaren gel to deal with pain. *Id.* He concluded that Solorio could not push or pull more than five pounds. *Id.* Almost two years later, in December 2014, Dr. Lin opined that Solorio's condition had improved, but only slightly: he recommended that she not push or pull more than five to ten pounds. AR 1653.

In July 2013, Solorio underwent an examination by Dr. Clark E. Gable, M.D, a consultative examiner. AR 1357-59. Dr. Gable observed that Solorio exhibited normal range of motion in her neck and shoulders. AR 1359. He noted mild tenderness around both of Solorio's elbows and said that her left epicondyle felt "a bit puffy." *Id.* Dr. Gable described Solorio's grip strength, which registered four out of five upon examination, as "slightly reduced." *Id.* He also noted that Solorio exhibited a somewhat depressed, flattened affect, although she appeared to be in no acute distress. AR 1358. Dr. Gable opined that she could lift to shoulder level ten pounds frequently, and twenty pounds occasionally. AR 1359.

## II. PROCEDURAL BACKGROUND

Solorio applied for disability benefits under Title II in March 2013. AR 134. The Commissioner denied the application initially and upon reconsideration, and Solorio requested a hearing before an administrative law judge. ALJ Christopher R. Inama (the ALJ) presided over a hearing in December 2014.

Two witnesses testified at the hearing, Solorio and a vocational expert. Solorio testified that, as a result of her workplace injuries, she cannot lift much more than a gallon of milk. AR 40. She claimed that she cannot return to housekeeping work because it hurts too much to perform chores in her own home. AR 43. She said her husband and two children help her around the house. AR 40. Solorio's testimony was consistent with claims she had previously made in questionnaires, in which she described the intensity and disabling effects of her pain: "Both arms, shoulders hurt; pain radiates all the way to the hands and makes it [painful] to lift or move even

3

small objects." AR 240. She added that she can walk for about thirty minutes at a time before needing to take a break, and that "daily activities, such as making breakfast or even cleaning [the] bathroom will make me very uncomfortable . . . and I have to take pain medicine." AR 240. That said, Solorio acknowledged that she does her own grocery shopping one to two times a week, usually with the aid of a family member, and that she can still make her bed, sweep, and mop the floors, although all of those chores take longer than they did before her injuries. AR 241; *see also* AR 200-208.

After Solorio testified, the ALJ questioned Darlene McQuary, a vocational expert. McQuary gave a summary of Solorio's work history, and then the ALJ presented McQuary with a series of hypotheticals:

> "I'm going to find that our claimant has marginal education and [is] unable to communicate in English. With that . . . assume a hypothetical individual with the same age, education level, and work experience as our claimant. Assume first a light exertional level with [multiple of exertional limitations, including] reaching above shoulder level [no more than] one out of eight hours [per working day] . . . and occasional . . . forceful grasping and push and pull."

AR 46-47. McQuary explained that such a person would not be able to perform housekeeping work. AR 47. McQuary could only think of one job that such a person could perform: a clerk/cashier, limited to the Spanish-speaking community. She estimated that 13,489 such jobs exist in California. AR 48. Upon further questioning, McQuary testified that if the hypothetical person could not frequently lift more than ten pounds, that person would not be able to perform the Spanish-speaking clerk/cashier job. *Id.*

The ALJ issued a written decision in March 2015. After concluding that Solorio met the insured status requirement for Title II benefits, the ALJ considered Solorio's disability claim with the five-step, sequential evaluation approach that is required by the Commissioner's regulations. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that Solorio had not performed substantial gainful activity since the alleged onset date of her disability (April 2012). At step two, the ALJ found that Solorio had multiple severe impairments: "left elbow lateral epicondylitis and extensor tendinitis, left shoulder slight-to-moderate sub-acromial impairment syndrome and AC joint degenerative arthritis, and left chronic carpal tunnel syndrome[.]" AR 18. At step three, the ALJ

4

determined that none of Solorio's impairments or combinations thereof met or were medically equivalent to the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Solorio had a residual functional capacity (RFC) to perform "less than the full range of light work, as defined in [20 C.F.R. § 404.1567(b)]." AR 19. The ALJ determined that Solorio can lift ten pounds frequently and twenty pounds occasionally. *Id.* The ALJ also concluded that Solorio cannot climb ladders, ropes, or scaffolds, and that she cannot reach above shoulder level with her non-dominant arm for more than one hour per work day. *Id.*

In determining Solorio's RFC, the ALJ gave significant weight to the opinion of Dr. Gable, and less weight to that of Dr. Lin.[1] The ALJ said that because Dr. Lin's opinion was procured in the course of Solorio's workers' compensation claim, it required special scrutiny. AR 22. The ALJ also determined that Dr. Lin's opinion was based primarily on Solorio's subjective complaints, and that it was inconsistent with other objective findings in the record. *Id.*; *see also* AR 1461-62 (state agency review physicians conclude that Dr. Lin's opinion was "without substantial support from other evidence of record").

The ALJ also discounted Solorio's own testimony concerning the severity of her pain symptoms.[2] The ALJ first determined that Solorio's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ then concluded that Solorio's statements about the intensity, persistence, and limiting effects of those symptoms were not entirely credible.[3] AR 20. The ALJ said that Solorio's daily activities, the conservative course of treatment prescribed by her treating physicians, and the objective medical evidence, were all

---

[1] The ALJ also gave limited weight to the opinions of Dr. Jayakar, Dr. Warbritton, and Dr. Pertsch, but Solorio did not challenge that aspect of the ALJ's decision. Moreover, Solorio's other treating physicians gave opinions more in line with that of Dr. Gable. *See* AR 1368 (Dr. Jayakar recommends lifting no more than twenty pounds occasionally); AR 1503 (Dr. Warbritton opines that Solorio can lift zero to ten pounds constantly, and eleven to twenty-five pounds occasionally); AR 1368 (Dr. Pertsch recommends "[c]onservative treatment").
[2] The ALJ discounted the testimony of Solorio's husband, but Solorio did not challenge that aspect of the Commissioner's decision.
[3] Under a Social Security Ruling issued after Solorio's hearing, the Commissioner clarified that an ALJ's determination of a claimant's "credibility" is "not an examination of an individual's character." SSR 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims (S.S.A. 2017).

inconsistent with a finding that Solorio's pain was as debilitating as she claimed. AR 19-23.

The ALJ then determined that, in light of Solorio's RFC, she cannot perform her past relevant work as a housekeeper. AR 23. The ALJ noted that housekeeping work requires regular reaching above the shoulder level, and he concluded that Solorio cannot perform that task. *Id.* At step five, however, the ALJ determined that Solorio can engage in other types of substantial gainful activity. Given Solorio's age, education, work experience, and RFC, the ALJ concluded that Solorio can work as a clerk/cashier, as defined in the Dictionary of Occupational Titles § 211.462-010, so long as the work is limited to the Spanish-speaking community. AR 23-24. Having thus determined that Solorio is not disabled, the ALJ denied her claim.

The Appeals Council subsequently denied Solorio's request for review of the ALJ's decision, AR 1, and Solorio appealed to this Court, Dkt. No. 1.

### III. LEGAL STANDARD

This Court has jurisdiction to review the Commissioner's decision to deny benefits, but must affirm if the Commissioner's decision applies the correct legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g) ("findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"); *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and is "more than a mere scintilla, but may be less than a preponderance." *Molina*, 674 F.3d. at 1110-11 (citations omitted). A court must consider the record as a whole when assessing whether the Commissioner's decision is supported by substantial evidence. *See Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986). "If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

"[E]ven when the ALJ commits legal error," however, the reviewing court is to "uphold the decision where that error is harmless." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citation omitted). An error is harmless only if it is "inconsequential to the ultimate nondisability determination." *Id.* at 494 (citation omitted).

United States District Court
Northern District of California

## IV.    DISCUSSION

Solorio raises two overarching arguments for why the Commissioner's decision should be reversed. First, Solorio contends that the ALJ failed to give specific, legitimate reasons for discounting the opinion of Dr. Lin, who had the most pessimistic account of Solorio's physical abilities. Second, she argues that the ALJ improperly discounted her testimony concerning pain symptoms.

### A.    Dr. Lin

Solorio argues that the ALJ discounted Dr. Lin's opinion because it was procured in the course of Solorio's workers' compensation application, and that this was improper. Solorio further contends that the ALJ understated the extent to which Dr. Lin's opinion was based on objective evidence.

As to the first argument, Solorio points out that an ALJ may not reject a physician's opinion simply because it was procured in the context of disability benefits litigation. *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits."). Here, Solorio argues that the ALJ rejected Dr. Lin's opinion "because he was a workers' compensation doctor[.]" Dkt. No. 16 at 6. Although the ALJ did say that medical opinions offered in the workers' compensation context are "often biased," AR 22, the ALJ did not simply write off Dr. Lin. The ALJ merely noted that medical opinions obtained in the course of a workers' compensation claim "must be carefully assessed." AR 22. As is discussed below, the ALJ then offered independent, valid reasons to discount Dr. Lin's opinion.

Second, Solorio argues that the ALJ failed to consider the sound, objective basis on which Dr. Lin based his opinion.

When evaluating medical evidence, an ALJ must give a treating physician's opinion "substantial weight." *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). When a treating physician's opinion is well-supported and not inconsistent with other substantial evidence in the record, a treating physician's opinion is entitled to controlling weight. *See Edlund*, 253 F.3d at 1157; 20 C.F.R. § 404.1527(c)(2). Even if the treating doctor's opinion is

contradicted by other evidence, an ALJ may discount the opinion of a treating doctor only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* For example, an ALJ may discount a medical opinion if it is based primarily on a claimant's subjective complaints, *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004), and if the opinion is inconsistent with the record as a whole, 20 C.F.R. § 404.1527(c)(2)(4).

Here, Solorio argues that the ALJ mischaracterized Dr. Lin's opinion as relying entirely on Solorio's subjective symptoms. In reality, she says, Dr. Lin's opinion was based on objective diagnostic findings, which were detailed in over 300 pages of medical records. Dkt. No. 16 at 4, 7. The Commissioner disagrees, characterizing Dr. Lin's opinion as "brief and conclusory[.]" Dkt. No. 20 at 4. Based on its independent review of the record, the Court does not see any error in the ALJ's conclusion. Although Dr. Lin's treatment records contain objective findings, the documents primarily describe Dr. Lin's efforts at managing Solorio's pain symptoms. *See, e.g.*, 1640-1720. Regardless, the ALJ offered other specific and legitimate reasons for discounting Dr. Lin's opinion. As the ALJ pointed out, Dr. Lin's opinion was also inconsistent with other evidence in the record, including the findings of Solorio's other treating physicians and the conservative treatment regimens they prescribed. *See* AR 1222-27; AR 1368.

In a related argument, Solorio contends that it was legal error for the ALJ to rely on Dr. Gable's opinion because Dr. Gable allegedly did not review any of Solorio's medical records. As Solorio points out, the regulations say that the Commissioner "will give the examiner any necessary background information about [a claimant's] condition." 20 C.F.R. § 404.1517. Further, at least one court in this district has remanded a case to the Commissioner where failure to provide a consultative examiner with medical files prejudiced the claimant. *See Ladue v. Chater*, No. C-95-0754-EFL, 1996 WL 83880, at *5 (N.D. Cal. 1996) (" This lack of information might have frustrated the purpose of the consultation, which was . . . to determine the effect plaintiff's medical condition had on her ability to work . . . .").

Dr. Gable's report suggests that he was provided with at least some of Solorio's medical records. AR 1358 ("There are notes from the Primary Medical Group describing her neck pain and her shoulder pain."). Regardless, there is no evidence that Dr. Gable was deprived of

8

"necessary background information" about Solorio's condition. Even without the benefit of the full record, Dr. Gable reached conclusions that were mostly consistent with the opinions of Solorio's treating physicians, Dr. Lin excepted. Accordingly, this Court is satisfied that if there was any legal error, it was harmless. *See Brown-Hunter*, 806 F.3d at 492.

### B. Solorio's pain symptoms

Solorio argues that the ALJ impermissibly rejected evidence concerning her subjective pain symptoms. As the ALJ noted, the Commissioner's regulations call for a two-step process to evaluate a claimant's pain allegations. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (*quoting Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.2002)).[4]

ALJs must be "especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work . . . will often be consistent with doing more than merely resting in bed[.]" *Garrison v. Colvin*, 759 F.3d at 1016. Solorio, however, suggests that an ALJ may make an adverse credibility finding *only if* the claimant is found to spend "a substantial part of [her] day engaged in pursuits . . . that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). This argument is incorrect. An ALJ must consider "all of the available evidence" to evaluate the intensity and persistence of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(1); *see also* SSR 96-7p, Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's

---

[4] The Commissioner objects to the "clear and convincing" standard, arguing that it is inconsistent with the more deferential standard set forth in 42 U.S.C. § 405(g). Even applying the higher standard, however, this Court concludes that the ALJ did not err in discounting Solorio's testimony.

9

Statements (S.S.A. 1996). For example, an ALJ may make an adverse credibility finding if doctors prescribed a conservative course of treatment, *see Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995), or if the objective medical evidence is inconsistent with the claimant's allegations, *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Here, the ALJ drew on all of the available evidence to consider Solorio's allegations of pain. The ALJ indeed concluded that Solorio engaged in a "somewhat normal level of daily activity," and that "many of the tasks . . . replicate those necessary for obtaining and maintaining employment." AR 20. He also said that Solorio had not received the kind of medical treatment one would expect of a disabled person, noting that Dr. Jayakar and Dr. Pertsch both recommended conservative courses of treatment. AR 1222-27; 1368. Finally, the ALJ emphasized that the objective medical evidence suggested that Solorio's condition had improved since 2011. In sum, the ALJ provided clear and convincing reasons to discount Solorio's allegations concerning her pain symptoms.

## V. CONCLUSION

Based on the foregoing, Solorio's motion for summary judgment is denied and the Commissioner's cross-motion for summary judgment is granted.

**IT IS SO ORDERED.**

Dated: January 11, 2018

HOWARD R. LLOYD
United States Magistrate Judge